UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE LEE PERRY,

                    Plaintiff,                            Case Number 13-14819
                                                      Honorable David M. Lawson

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT, AFFIRMING DECISION OF THE COMMISSIONER,
AND DISMISSING COMPLAINT WITH PREJUDICE**

Plaintiff Michelle Lee Perry filed the present action challenging the decision of the

Commissioner of Social Security to deny her a period of disability and disability insurance benefits

under Title II of the Social Security Act and supplemental security income benefits under Title XVI

of the Social Security Act. The case initially was referred to a magistrate judge under 28 U.S.C. §

636(b) and E.D. Mich. LR 72.1(b)(3). Thereafter, the parties filed cross motions for summary

judgment. Since then, the Court has withdrawn the reference and will address the parties' motions

without the benefit of a report from a magistrate judge.

The plaintiff identifies a single issue in her brief: that the opinion of a vocational expert (VE)

does not furnish substantial evidence that the plaintiff can engage in substantial gainful activity

because the administrative law judge (ALJ) failed to include all of the plaintiff's limitations in the

hypothetical question to the VE about the jobs she could perform. Embedded in that issue is a

complaint about the ALJ's determination of the plaintiff's residual functional capacity (RFC) to

work. And embedded still deeper is the argument that the ALJ impermissibly failed to give

controlling weight to the plaintiff's primary care physician. For the reasons that follow, the Court

finds that the ALJ gave good reasons for placing little weight on the plaintiff's doctor's opinion on disability, the ALJ's RFC determination is supported by substantial evidence, and the hypothetical question to the VE included an accurate representation of the plaintiff's limitations. Therefore, the Court will deny the plaintiff's motion for summary judgment, grant the defendant's motion for summary judgment, affirm the findings of the Commissioner, and dismiss the complaint.

## I.

The plaintiff, who is now 49 years old, filed her current application for a period of disability and disability insurance benefits and supplemental security income benefits on February 24, 2011. She initially alleged that she became disabled and unable to work on March 4, 2009 due to post traumatic stress disorder (PTSD), bipolar disorder, degenerative disc disease, depression, arthritis, neck pain, and emotional difficulties, but later amended the onset date to November 1, 2009. She completed her G.E.D. and three years of college and has worked as a bartender, lunch room helper, production worker, stocker, and cashier. The plaintiff last worked on December 31, 2009 when she stopped working due to her conditions. Doctors diagnosed the plaintiff with degenerative disc disease of the cervical and lumbar spine; depression; bipolar disorder; lumbar laminectomy; chronic back, neck, shoulder, and knee pain; endometriosis; menorrhagia; and PTSD. Tr. 17-18, 265, 271, 273-75, 389, 419, 446-47, 192.

The medical records reveal a history of back pain, degenerative disc disease of the cervical and lumbar spine, depression, anxiety, and lumbar laminectomy. Tr. 75-76. The plaintiff first had surgery on her back in 2001 or 2002, but the plaintiff does not remember what initially caused her injury. Tr. 105-06, 419, 450. The plaintiff also reports being raped in her twenties and sought psychological treatment because her son's father choked her. Tr. 101, 419, 451. She states that she

-2-

has ongoing neck pain because of the incident. Tr. 101. In April 2006, Dr. Kevin Bur reviewed an MRI of the plaintiff's lumbosacral spine and noted that the plaintiff's range of motion was diminished somewhat on all planes. Tr. 75-76. He diagnosed her with degenerative disc disease of the lumbosacral and cervical spines as well as anxiety and depression. Tr. 76. That same month, the plaintiff complained to Dr. Angala Borders-Robinson about recurrent back pain that radiated down her lower extremity. *Ibid.*

In September 2006, Leonard McCullough, M.A., and Louis Brooks, Ph.D. performed a psychiatric evaluation of the plaintiff. *Ibid.* They diagnosed her with severe depression and noted that she was difficult to interview because she exhibited anger, resentment, and feelings of being wronged. *Ibid.* However, they also noted that the plaintiff appeared to be in good contact with reality. *Ibid.*

The plaintiff applied for disability benefits after falling in the parking lot of a Walmart store, which exacerbated her back pain. Tr. 32-33, 441. She reports that activities such as exercise, sitting, standing, walking, bending, coughing, and sneezing aggravate her spinal pain. Tr. 441.

Dr. David Dotson is the plaintiff's primary care physician. He has treated her for back, neck, shoulder, and knee pain; depression; and PTSD. He has ordered a number of MRIs of the plaintiff's back and knee. Tr. 389-90, 403, 416. On April 7, 2009, an MRI of the plaintiff's lumbar spine revealed moderate spondylotic changes at the L5-S1 level, but no significant spinal canal stenosis or neural foraminal narrowing. Tr. 416. On November 18, 2009, an MRI of the plaintiff's left knee revealed evidence of chondromalacia of the patella and patellofemoral osteoarthritis. Tr. 395. And on December 22, 2009, an MRI of the plaintiff's lumbar spine showed chronic diskogenic changes at the adjacent vertebral bodies and at vertebral endplates at L5-S1; a small non-enhancing

epidural signal abnormality in the left neural foramen at L5-S1 which may be due to a small recurrent disk herniation; and mild circumferential bulging of the intervertebral disk at L3-L4. Tr. 389-390. The plaintiff's treatment included the use of a transcutaneous electrical nerve stimulation (TENS) unit; Trazadone, Zoloft, Seroquel, Vicodin, and other medications; and Toradol injections. Tr. 17, 216, 275.

In April 2010, the plaintiff's physical therapist, Amy Barden, noted that her pain had decreased as a result of physical therapy and her strength and functioning had improved. Tr. 431. The plaintiff was discharged from physical therapy the following month. Tr. 433.

On February 11, 2010, Dr. Hugo Lopez Negrete, a neurosurgeon, evaluated the plaintiff. Tr. 441. The plaintiff reported "the worst possible pain," relieved by nothing. *Ibid.* Dr. Negrete conducted a physical examination of the plaintiff and noted that the "[p]atient complains loudly of pain and screams during the examination." Tr. 182. Dr. Negrete noted tenderness on the entire spine, but no paraspinal muscle spasm. *Ibid.* He diagnosed the plaintiff with chronic pain syndrome without a significant change on the MRI images of the lumbar spine and cervical spondylosis with no evidence of myelopathy or radiculopathy. *Ibid.* Dr. Negrete recommended physical therapy for the pain, psychiatric management, and exercise. Tr. 442-43.

On March 29, 2010, Dr. Jawad A. Shah, a neurosurgeon, concluded that the plaintiff "probably has a chronic component of back pain" and "her symptoms are certainly real." Tr. 447. However, Dr. Shah remained hesitant to recommend surgery at that time and instead told the plaintiff to lose weight and to go to physical therapy. *Ibid.*

On May 18, 2010, Dr. Shah observed that the plaintiff is "completely debilitated and unable to do any of her normal activities and is crying out in pain." Tr. 284. Dr. Shah diagnosed the

plaintiff with "severe L4-L5 disk herniation" and recommended "[s]pinal decompressive surgery." Tr. 283-84. He performed that surgery on June 7, 2010. The procedure was a L4-L5 laminectomy with partial medial facetectomies and an interbody fusion cage at L4-L5. Tr. 319.

On June 29, 2010, Dr. Shah reported that the plaintiff was "doing wonderfully" following her surgery, her pain was "much more controlled," and "[the plaintiff] is very pleased with [the] results" of her surgery. Tr. 444. The plaintiff reiterated her satisfaction with her surgery on September 21, 2010. Tr. 448.

On February 17, 2011, an MRI of the cervical spine revealed degenerative changes at the C5-C6 level with a large posterior disc osteophyte complex at the C5-C6 level. Tr. 403. On March 14, 2011, an MRI of the plaintiff's left shoulder revealed no evidence of a bone fracture or dislocation. Tr. 386. However, the MRI did reveal mild degenerative arthritic changes of the glenohumeral joint, degenerative hypertrophic change of the AC joint with mild impingement, and contour irregularity of the distal portion of the acromion. Tr. 386-87.

On July 25, 2011, Dr. Asit K. Ray, an internist, performed a consultative examination of the plaintiff for the Department of Human Services. Tr. 419. During the physical examination, Dr. Ray noted that the plaintiff was not using a cane or walker; she could walk on her tiptoe as well as on the heel without showing any weakness; she could squat fully with deep knee and hip bending and stand up independently; there was no evidence of cervical para vertebral muscle spasm or soft tissue tenderness; and his examination of her lumbar spine revealed that it was "fairly normal." Tr. 420-21. Dr. Ray concluded that the plaintiff could perform her usual and customary activities including her occupational duties without any restrictions. Tr. 422.

-5-

On July 28, 2011, Dr. Quan Nguyen, a consultant, performed a physical residual functional capacity assessment on the plaintiff based on a review of the records.  He found that the plaintiff had the following limitations: she could occasionally lift or carry 20 pounds or frequently lift or carry ten pounds; stand or walk for a total of six hours in an eight-hour workday; no restrictions on using hand or foot control or climbing ramps or stairs; could not climb ladders, ropes, or scaffolds; and may stoop, kneel, crouch or crawl occasionally.  Tr. 94-95.

On August 1, 2011, Dr. Thomas T. L. Tsai, another consultant, performed a mental residual functional capacity assessment based on a review of the records.  He found that the plaintiff was moderately limited in carrying out detailed instructions and maintaining attention and concentration for extended periods, but had no social interaction limitations.  Tr. 97-98.  Dr. Tsai concluded that the "the claimant is able to understand, remember, and carry out simple instructions; make judgments that are commensurate with the functions of unskilled tasks, i.e., work-related decisions; respond appropriately to supervision, coworkers and work situations; and deal with most changes in a routine work setting."  Tr. 97.  Dr. Tsai opined that the plaintiff is limited to unskilled, light work due to her impairments, but she should be able to do unskilled tasks.  Tr. 98, 107.

On October 27, 2011, Dr. Shah again examined the plaintiff after she complained about pain in her neck and lower back.  Tr. 479.  Reviewing an MRI of the plaintiff's cervical spine, Dr. Shah observed a disc osteophyte formation at C5-C6 with a slight subluxation.  *Ibid.*  Dr. Shah recommended that the plaintiff begin physical therapy and to get an MRI of the lumbar spine.  *Ibid.*

Dr. J. Keith Ostien, a licensed pyschologist, conducted a psychological evaluation of the plaintiff on October 7, 2011 following a referral by the Shiawassee County Department of Human Services.  Tr. 450.  There were no records available at the time of the evaluation; Dr. Ostien

-6-

therefore relied on the information that the plaintiff provided. *Ibid.* Dr. Ostien reported that the plaintiff was extremely angry, reactive, and bitter, but had not sought psychological treatment in the last five years. Tr. 451. He noted that the plaintiff did not exhibit evidence of illogical, bizarre, or circumstantial ideation or any evidence of hallucinations, delusions, or obsessions. Tr. 451-52. However, Dr. Ostien noted that the plaintiff exhibited evidence of posttraumatic stress and moderately severe levels of depression and anxiety. Tr. 452. He concluded that the plaintiff had severely impaired capabilities to interact appropriately and effectively with co-workers and supervisors and to adapt to changes in the work setting and her distress would result in moderately impaired capacity to do work-related activities. *Ibid.*

On May 25, 2012, Dr. Dotson diagnosed the plaintiff with bipolar disorder and PTSD. Tr. 455. He concluded that the plaintiff's ability to relate to and interact with supervisors and co-workers and ability to withstand the stress and pressures associated with an eight-hour workday was extremely limited and that her ability to maintain concentration for at least two hours and to understand, remember and carry out complex job instructions were markedly limited. *Ibid.* Dr. Dotson also diagnosed the plaintiff with lumbar radiculopathy, cervical radiculopathy, and restless leg syndrome. Tr. 454. He concluded that the plaintiff could occasionally, but not frequently, lift or carry less than ten pounds; could stand for less than two hours in an eight-hour day; could sit for less than six hours in an eight-hour day; could not use push or pull controls; and would frequently miss work due to her back injuries. *Ibid.*

On July 26, 2012, Dr. Shah reviewed an MRI of the plaintiff's lumbar spine and diagnosed the plaintiff with cervical spine stenosis. Tr. 479. Dr. Shah noted that the plaintiff had a progression

of disc protrusions, but did not recommend surgery because the protrusions were not significantly distorting the plaintiff's neural elements. *Ibid.* Instead, he recommended pain management. *Ibid.*

The plaintiff's application for disability insurance benefits was denied initially. The plaintiff made a timely request for an administrative hearing. On June 1, 2012, she appeared before Administrative Law Judge Lawrence E. Blatnik when she was 47 years old, represented by attorney Mikel Lupisella. She testified that she primarily is seeking disability because of her back problems. Tr. 45. She testified that she takes Motrin and Toradol shots, which provides some pain relief. Tr. 48. The plaintiff conceded that her surgery improved her functioning, but she is experiencing pain again. Tr. 48. She admitted that she is not currently doing physical therapy and testified that injections does not relieve her pain and a TENS unit provides only a little relief. Tr. 50. The plaintiff testified that she can walk a city block some days, but other days she cannot even get out of bed. Tr. 51-52. She also testified that she cannot sit comfortably for more than five minutes, but is able to bathe, dress herself, and perform her own personal hygiene. Tr. 52, 54. The plaintiff also indicated that she sometimes prepares meals for herself and her son and is able to do some household chores such as dusting, moping, sweeping, and vacuuming. Tr. 54-55. She also uses her computer to check Facebook and her son's grades, and to play games. Tr. 57. The plaintiff indicated that she could not perform a simple sit-down job because of her back injuries. Tr. 57.

Georgette Gunther, a vocational expert, testified that the plaintiff cannot perform any of her previous work as an account clerk, assembler, inventory clerk, cake decorator, cafeteria attendant, factory helper, delivery clerk, and department manager. Tr. 62. The ALJ asked Ms. Gunther to assume that the plaintiff had the following limitations: she cannot lift or carry more than 20 pounds occasionally and ten pounds frequently; she can sit, stand or walk for at least six hours; she needs

a sit/stand option that enabled her to change position every 30 to 45 minutes; she cannot climb ladders, ropes or scaffolds; can only occasionally stoop, kneel, crouch or crawl; she is limited to simple routine repetitive work; she cannot perform at a production rate pace, but can perform goal-oriented work; she is restricted to work that involves only occasional interaction with co-workers; she is limited to tolerating few changes in a routine work setting no more than once per month; and she cannot perform any work that requires collaborative work as a part of a team.  Tr. 63.  Ms. Gunther testified that several jobs fit within those limitations in significant numbers in Michigan, including a silverware wrapper, weigher, and produce sorter (but at a 50 percent erosion because of the sit/stand option).  Tr. 63-64.

The ALJ then asked Ms. Gunther a second hypothetical that reduced the lifting capacity to ten pounds occasionally and less than ten pounds frequently and reduced the standing and walking capacity to two hours in an eight-hour workday.  Tr. 64.  Ms. Gunther testified that several jobs fit within those limitations, including a surveillance system monitor, packer, and assembly bench work at a 50 percent erosion because of the sit/stand option.  *Ibid.*

ALJ Blatnik filed a decision on September 7, 2012 in which he found the plaintiff was not disabled.  He reached that conclusion by applying the five-step sequential analysis prescribed by the Secretary in 20 C.F.R. §§ 404.1520, 416.920.  The ALJ found that the plaintiff meets the insured status requirements of the Social Security Act through December 31, 2009 and has not engaged in substantial gainful activity since November 1, 2009 (step one); the plaintiff suffered from degenerative disc disease and spinal stenosis of cervical and lumbar spine, status post lumbar fusion/laminectomy, degenerative arthritis of both shoulders and knees, depression, PTSD, and a personality disorder, which are "severe" within the meaning of the Social Security Act (step two);

-9-

none of those impairments alone or in combination met or equaled a listing in the regulations (step three); and the plaintiff could not perform her previous work as an accounting clerk, assembler, sewer, inventory clerk, cake decorator, department manager, cafeteria attendant, factory helper, and route delivery driver, which were unskilled and semi-skilled jobs requiring light-to-medium exertion.

In applying the fifth step, the ALJ concluded that the plaintiff had the residual functional capacity to perform sedentary work. However, the ALJ found that the plaintiff had the following limitations: she can lift or carry a maximum of ten pounds occasionally and less than ten pounds frequently; in an eight-hour workday, the plaintiff can walk or stand up to two hours and sit for at least six hours; she needs a sit/stand option that allows a change of position every 30 to 45 minutes; the claimant can only occasionally stoop, kneel, crouch, or crawl; the claimant can never climb ladders, ropes, or scaffolds; she is limited to simple, routine, and repetitive tasks; the claimant is not able to perform at a production rate pace, but can perform goal oriented work; she can only occasionally interact with co-workers; the claimant is limited to tolerating few changes in a routine work setting defined as routine work that does not involve frequent significant changes or adaptations more than once per month; and she can do no teamwork. A vocational expert testified that several jobs fit within those limitations, including surveillance system monitor, packer, and bench assembler (at a 50 percent erosion because of the sit/stand option), and the ALJ found that these jobs existed in significant numbers in the national economy. Based on those findings, and using Medical Vocational Rule 202.11 as a framework, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act.

The ALJ observed that Dr. Dotson found the plaintiff's mental and physical limitations are work preclusive.  Tr. 21.  However, the ALJ gave Dr. Dotson's opinions little weight because the ALJ did not believe his opinions were fully supported by his own course of treatment or other medical evidence in the record, and because Dr. Dotson's evaluation of the plaintiff's mental limitations was outside his area of expertise.  *Ibid.*  Instead, the ALJ gave significant weight to the assessment of state agency physician Dr. Tsai and some weight to the physical residual functional capacity assessment of state agency physician Dr. Nguyen.  *Ibid.*  Following the decision by the ALJ, the plaintiff appealed to the Appeals Council, which denied the plaintiff's request for review on September 24, 2013.

The plaintiff filed the present action on November 22, 2013.

## II.

This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Judicial review of the Commissioner's decision is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Brainard v. Secretary of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1997)).  Substantial evidence is more than a mere scintilla of evidence, but less than a preponderance.  *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).  It is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535-36 (6th Cir. 1981) (quoting *Richardson*, 402 U.S. at 401).  The scope of the court's review is limited to an examination of the record.  *Brainard*, 889 F.2d at 681.  District courts may not review the

-11-

evidence *de novo*, make credibility determinations nor weigh the evidence. *Ibid.* (citing *Reynolds v. Secretary of Health and Human Services*, 707 F.2d 927 (6th Cir. 1983)).

In evaluating the existence of substantial evidence, the court must examine the record as a whole. *Kirk*, 667 F.3d at 536 (citing *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if substantial evidence also supports the opposite conclusion, *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), and even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

The plaintiff argues that the ALJ erred in relying upon the vocational expert's testimony because the hypothetical question that the ALJ posed to the expert did not accurately account for her limitations. "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Cmm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) (citing *Howard. v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239, 241 (6th Cir. 2002)); *see also Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'" *Varley*, 820 F.2d at 779 (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)). "Under the social security laws, if a claimant concludes that an ALJ erroneously calculated her residual functional capacity, she may bring an action against the Commissioner in federal district court challenging the denial of her

benefits." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004) (citing 42 U.S.C. § 405(g)).

The plaintiff's brief is not a model of clarity. However, it appears that the plaintiff believes that the hypothetical question should have reflected her treating physician's conclusion that she was unable to work.

"Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique prospective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting 20 C.F.R. § 416.927(d)(2)). Under the treating physician rule, "the Commissioner has mandated that the ALJ 'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)). Moreover, where, as here, "the ALJ declines to give a treating source's opinion controlling weight, he must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Id.* at 937. Moreover, "the ALJ must provide 'good reasons' for discounting treating physicians' opinions." *Rogers*, 486 F.3d at 242 (citations omitted). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to

-13-

the treating source's medical opinion and the reasons for that weight.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). There is a two-fold purpose behind this procedural requirement:

> "[t]he requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Id.* at 407 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

### A. Mental limitations

Dr. Dotson, the plaintiff's treating physician, found the claimant's mental limitations to be work preclusive. On May 25, 2012, he diagnosed the plaintiff with bipolar disorder and PTSD and, among other conclusions, stated that the plaintiff's ability to withstand the stress of an eight-hour workday and to relate to and interact with supervisors was extremely limited. Tr. 455. However, the ALJ concluded that Dr. Dotson's diagnosis was entitled to little weight because he is not a psychiatrist and his diagnosis was outside his field of expertise.

Rather than giving Dr. Dotson's opinion controlling weight, the ALJ afforded Dr. Tsai's opinion, a state agency physician, significant weight concerning the plaintiff's mental limitations. Dr. Tsai concluded that the plaintiff was "able to understand, remember, and carry out simple instructions; make judgments that are commensurate with the functions of unskilled tasks, i.e., work-related decisions; respond appropriately to supervision, coworkers and work situations; and deal with most changes in a routine work setting." Tr. 111. He also concluded that the plaintiff did not

-14-

have any problems with attention and could perform simple tasks on a routine and regular basis. *Ibid.*

Additionally, the ALJ afforded some weight to Dr. Ostien's opinions. Dr. Ostien, a licensed psychologist, noted that the plaintiff did not exhibit evidence of illogical, bizarre or circumstantial ideation and did not exhibit any evidence of hallucinations, delusions, or obsessions. Tr. 451. Dr. Ostien observed that the plaintiff exhibited intense levels of anger, bitterness, and emotional reactivity and exhibited evidence of an underlying personality disorder and PTSD. Tr. 451-52. Dr. Ostien concluded that the plaintiff had mildly limited capabilities to understand, retain, and follow simple instructions and to perform and complete simple tasks; possessed severely impaired capabilities to interact appropriately and effectively with co-workers and supervisors and to adapt to changes in the work setting; and her psychological distress would result in moderately impaired capacity to do work-related activities. Tr. 451.

Based on those limitations, the ALJ concluded that the plaintiff had the residual functional capacity to perform sedentary work with the following restrictions to accommodate her mental limitations: the plaintiff can only occasionally interact with co-workers; she is limited to tolerating few changes in a routine work setting; and she is incapable of doing teamwork. The hypothetical question presented to the vocational expert accurately reflected the ALJ's assessment of the plaintiff's mental limitations, an assessment which is supported by substantial evidence in the record.

### B. Physical limitations

Dr. Dotson also found that the plaintiff's physical limitations were work preclusive. On May 25, 2012, Dr. Dotson diagnosed the plaintiff with lumbar radiculopathy, cervical radiculopathy, and restless leg syndrome. Tr. 454. He concluded that the plaintiff could occasionally, but not

-15-

frequently, lift or carry less than ten pounds; could stand for less than two hours in an eight-hour day; could sit for less than six hours in an eight-hour day; could not use push or pull controls; and would frequently miss work due to her back injuries. *Ibid.*

The ALJ concluded that Dr. Dotson's opinion is entitled to little weight because his own treatment records and the medical evidence suggest that he overstated the plaintiff's limitations. For instance, his own notes from the same date indicate that the plaintiff experienced no acute distress upon physical examination. *See* Tr. 458. In fact, all of Dr. Dotson's records indicate that the plaintiff was not experiencing acute distress. Tr. 456, 462, 464, 466, 468, 470, 472, 474, 476.

Rather than assigning Dr. Dotson controlling weight, the ALJ indicated that he assigned some weight to the physical residual functional capacity assessment of State agency physician Dr. Quan Nguyen. Dr. Nguyen concluded that the plaintiff is able to perform light work; can occasionally lift 20 pounds or frequently lift ten pounds; can stand or walk about six hours in an eight-hour workday; can sit about six hours in an eight-hour workday; cannot climb ladders; and can occasionally stoop, kneel, or crouch. Tr. 109-110. However, the ALJ concluded that the plaintiff had greater physical restrictions that limit her to sedentary work.

Additionally, the ALJ gave some weight to Dr. Ray's observations. The plaintiff argues that the ALJ should have disregarded Dr. Ray's opinions because they are "canned" and against the weight of the evidence. Dr. Ray noted that the plaintiff can walk on her tiptoes and her heels following her surgery; is independent in her self care and daily activities, including driving; and "would be able to perform her usual and customary activities including her occupational duties without any restrictions." Tr. 420-22. There is no evidence that Dr. Ray's opinions were "canned,"

-16-

and the ALJ properly considered Dr. Ray's findings in formulating the plaintiff's residual functional capacity.

Finally, the ALJ gave some weight to Dr. Shah's observations.  On May 21, 2010, Dr. Shah observed that the plaintiff is "completely debilitated and unable to do any of her normal activities and is crying out in pain."  Tr. 284.  Dr. Shah diagnosed the plaintiff with "severe L4-L5 disk herniation" and recommended "[s]pinal decompressive surgery."  Tr. 283-84.  Dr. Shah reported that the plaintiff was "doing wonderfully" following her surgery, her pain was "much more controlled," and "[the plaintiff] is very pleased with [the] results" of her surgery.  Tr. 444.

The plaintiff argues that Dr. Shah's opinions should be disregarded because they fail to account for her other ailments.  However, the plaintiff conceded at the hearing that her back pain is the primary reason she applied for disability.  The ALJ properly considered the medical records from Dr. Shah in assessing the plaintiff's residual functional capacity.

Ultimately, the ALJ concluded that the plaintiff had the residual functional capacity to perform sedentary work with the following limitations: she can lift or carry a maximum of ten pounds occasionally and less than ten pounds frequently; can walk or stand up to two hours and sit for at least six hours; needs a sit/stand option that allows a change of position every 30 to 45 minutes; and can only occasionally stoop, kneel, crouch or crawl; and can never climb ladders, ropes, or scaffolds.  The hypothetical question presented to the vocational expert accurately reflected the ALJ's assessment of the plaintiff's physical limitations.

The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts.  In fashioning the hypothetical question to be posed to the vocational expert, the ALJ "is

-17-

required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). "[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability," and "can present a hypothetical to the [vocational expert] on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). The ALJ's hypothetical question appropriately captured the plaintiff's impairments; the ALJ gave adequaate reasons for not according Dr. Dotson's opinions controlling weight.

### C.  Subjective experience of pain

Finally, the plaintiff argues that the ALJ did not properly evaluate her credibility. "It is . . . for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247 (citing *Walters*, 127 F.3d at 531). However, the ALJ's credibility determination must find support in the record. "Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints 'based on a consideration of the entire case record.'" *Ibid.* "The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record." *Ibid.*

The plaintiff testified that she has difficulty sitting, standing, walking and lying down for long periods of time. However, she also testified that she can carry a gallon of milk; can bathe, dress herself, and manage her personal hygiene; prepares her own meals occasionally; does some of the

-18-

household chores, including dusting, mopping, sweeping, and vacuuming; and plays games on the computer. Nevertheless, the plaintiff does not believe that she could maintain a "simple sit-down job."

The ALJ concluded that the plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms are not fully credible to the extent they are inconsistent with his residual functional capacity assessment. That conclusion is consistent with the entire case record, including the records from Dr. Nguyen, Dr. Ray, Dr. Ostien, and Dr. Shah discussed above.

III.

The ALJ applied the correct legal standards and his conclusions are supported by substantial evidence in the record.

Accordingly, it is **ORDERED** that the plaintiff's motion for summary judgment [dkt. #8] is **DENIED**, the defendant's motion for summary judgment [dkt. #10] is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

It is further **ORDERED** that the complaint is **DISMISSED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 31, 2015

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 31, 2015.

s/Susan Pinkowski
SUSAN PINKOWSKI